Aristeo Lira FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 1183–93.

Court of Criminal Appeals of Texas, En Banc.

June 28, 1995.

Donald F. Killingsworth, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., and Amy R. Blalock, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

A Smith County jury convicted appellant, Aristeo Lira Flores, of driving while intoxicated. The trial court assessed punishment at confinement for one year and a $100 fine. The Twelfth Court of Appeals affirmed the conviction. *Flores v. State*, 903 S.W.2d 769

(Tex.App.—Tyler 1993). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in holding that appellant was not denied his rights under the United States and Texas constitutions when the trial court, in assessing punishment, took into account his inability to speak English.

The record reflects that the trial court determined that Smith County had no rehabilitation programs for persons convicted of alcohol offenses who do not speak English. The trial court also stated its belief that a state-run alcohol education program, which was offered in Spanish (appellant's native language), was worthless. Based on the preceding, the trial court decided that probation in appellant's case would be meaningless. The trial court then sentenced appellant to jail.

In his petition, appellant argues that the trial court's action in denying him probation because of his inability to speak English denied him due process, due course of law, equal protection of the laws, and equal rights under the United States and Texas constitutions. Appellant's argument rests entirely on the assumption that disparate treatment based on linguistic ability is the same as disparate treatment based on race or ethnic origin. In other words, according to appellant different treatment based on inability to speak English is equivalent to discrimination based on race or national origin.

■ There is no question that discrimination based on race or national origin is prohibited by the due process, due course of law, equal protection, and equal rights clauses of the United States and Texas constitutions. Appellant does not show that he was discriminated against due to national origin, however; any disability he suffered was due to his ability to speak only Spanish. Spanish-speaking persons have many national origins, e.g., Cuba, Spain, Mexico and Argentina, and may be racially Caucasian, African, Indian, biracial or multiracial. To accept appellant's argument—that language equals national origin or race—assumes illogically that all Spanish-speaking persons should be treated as one group.[1] At least three federal appeals courts have held that language, by itself, does not identify members of a suspect class. *Frontera v. Sindell,* 522 F.2d 1215 (6th Cir. 1975); *Soberal–Perez v. Heckler,* 717 F.2d 36 (2d Cir.1983), cert. denied, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984); *Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).

■ The constitutional provisions in question generally allow governmental classifications that are rationally related to legitimate governmental interests. The provisions require a higher justification, however, for classifications that affect suspect classes or fundamental rights. Extending such strict judicial scrutiny to classifications based on language ability would require this Court to equate same with individual characteristics that are a result of birth. The United States Supreme Court has found the basis for finding a suspect class to be "immutable characteristics" over which a person has no control: race, gender, and national origin. See *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). An individual is free to choose the language he or she speaks and one only needs to look at the history of the United States to find millions of examples of individuals who came here speaking many different languages but who learned to speak at least one additional language, generally English. Clearly, language ability *does not equal* national origin or race.

■ Similarly, there is no fundamental right to receive probation; it is within the discretion of the trial court to determine whether an individual defendant is entitled to probation. *Washington v. McSpadden,* 676 S.W.2d 420 (Tex.Cr.App.1984); *Burns v. State,* 561 S.W.2d 516 (Tex.Cr.App.1978). Since no fundamental right is at issue in the present case, heightened scrutiny is not indicated. *Nordlinger v. Hahn,* 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

■ As no suspect class is involved and no fundamental right is implicated, we need only

1. Persons of Cuban descent would probably not agree that they are of the same national or ethnic origin as persons of Argentine descent, to use but one example.

determine whether the action of the trial court was rationally related to a legitimate governmental interest. The court found that appellant could not benefit from the only meaningful alcohol education program available due to his inability to speak English. As probation was not a viable option without the program and the State had a legitimate interest in sentencing an individual convicted of his second DWI offense, incarceration was an appropriate punishment. Appellant was treated no differently than any other similarly-situated convicted drunk driver who could not speak English.[2] Therefore, the judgment of the trial court was constitutional.

Appellant alleges that the due course of law and equal rights clauses of the Texas Constitution should be interpreted to provide greater protection than the United States Constitution. However, appellant fails to cite any authority or present any evidence that the authors of the Texas Constitution would have agreed with his position.

Finally, appellant avers that because many Hispanics speak only Spanish, the failure of the State to have alcohol treatment programs in Spanish as part of probation for persons convicted of DWI means disproportionately more Hispanics convicted of DWI will be incarcerated compared to those who speak English. Disparate impact analysis is often applied in employment law where tests or other hiring criteria that are neutral on their face result in members of suspect classes— racial minorities, ethnic groups, women—being excluded in higher percentages from jobs than non-suspect class members. See *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The use of disparate impact analysis is the subject of much controversy and this Court should not extend its use into the criminal law absent direction from the U.S. Supreme Court or the Legislature. Furthermore, the U.S. Supreme Court has refused to extend disparate impact analy-

sis to state action, requiring instead that discriminatory *intent* on the part of the State be proven in order to establish a violation of the Equal Protection Clause. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

An acceptance of appellant's argument could lead to many unfortunate results. For example, one could be that cash-strapped local, county, and state governments would be required to set up, as part of probation, alcohol and drug education programs in many different languages. Another could be that a probationer who does not speak English would have to be provided a probation officer (or an interpreter) who speaks his language. This is a matter best left to the legislature.

The judgment of the court of appeals is AFFIRMED.

WHITE, J., concurs in the result.

MEYERS, Judge, concurring on Appellant's Petition for Discretionary Review.

I agree with the Court that discrimination on the basis of a person's inability to speak English does not raise a presumption of discrimination on the basis of race or national origin. However, had the record in this case reflected that appellant's inability to speak English was actually a pretext for racial discrimination, I would not hesitate to reverse his conviction. For example, were it to appear that this judge commonly denied probation to similarly situated Hispanic persons who were able to speak the English language, the inference might be compelling that he was actually motivated by racial animus. As it is, however, we have no reason to suspect, as an empirical matter, that he did

---

**2.** The dissent fails to mention that the same result would have occurred if appellant spoke only Vietnamese, Russian, or German. While it is true that the number of Texas residents who speak only Spanish is greater than the number who speak only, e.g., Vietnamese, constitutional rights are *not* based on numbers. Had Appellant been able to speak English he might have received a lesser punishment (probation). The dis-

sent appears to suggest that, since the alcohol treatment program that is part of probation is not available in Spanish, appellant should, in effect, receive less punishment than similarly-situated English-speaking individuals convicted of second-offense DWI, re, something less than the standard probation with the alcohol treatment program.

not in fact deny probation for the reason actually given. Accordingly, appellant has not established a case of racial discrimination on this record. For this reason, I concur in the judgment.

CLINTON, Judge, dissenting on Appellant's Petition for Discretionary Review.

We granted review to decide whether the court of appeals correctly determined that although the trial court took into account appellant's "linguistic abilities" in denying probation and thus "treated him differently as a result," the requirement that appellant be "able to understand, participate in, and profit from, the *only available and effective program*, was rational and not evidence of animosity toward [appellant's] racial or ethnic group." *Flores v. State*, 903 S.W.2d 769 (Tex.App.—Tyler 1993).[1]

In my view, the trial judge diagnosed the situation in Smith County more pragmatically, *viz:*

"[T]here are no provisions in this county to help Spanish speaking people who are convicted of alcohol offenses."

"[T]he ... alcohol education program ... does have a Spanish class but it is worthless."

"The alcohol treatment programs are simply not available in Spanish. I've been trying ever since I've been here to ... get this county to admit what century we're in, but it has not happened."

"If I put you on probation, that's absolutely meaningless."

Due process considerations aside, our own "equal protection" clause guarantees against denial or abridgment of equality under the

law because of, *inter alia,* "national origin." Article I, § 3a. Bill of Rights, V.A.T.C. The term embraces aspects of ethnicity of the nation of origin, including its language.

To reject probation for one who is otherwise eligible because the State through its local governing body has failed or refused to provide probationary programs for Spanish speaking people with "linguistic difficulties" is to deny or abridge equality of treatment under the law in violation Article I, § 3a.

The plurality summarily dismisses contentions in this regard advanced by appellant (as well as Amicus Curiae) under § 3a because he "fails to cite any authority or present any evidence that the authors of the Texas Constitution would have agreed with his position." Opinion, at 131. Alas, the plurality overlooks that the "authors" declared the amendment "self-operative," and its intendment is certainly self-evident.

Accordingly, I respectfully dissent.[2]

OVERSTREET, Judge, dissenting on Appellant's Petition for Discretionary Review.

The majority opinion holds that it is acceptable for a trial judge to refuse to grant probation to a defendant simply because he does not speak English. Had the Legislature passed an act that precluded non-English speakers from probation eligibility, apparently the majority would likewise hold such to be constitutionally acceptable. However, it is my belief that such restrictions, whether statutorily enacted by the Legislature or pronounced from the bench by a trial judge, violate this nation's legal foundations guaranteeing *all* Americans, regardless of linguistic abilities, due process and *equal* protection under the law.[1]

1. All emphasis is mine throughout unless otherwise indicated.

2. Actually, the issues presented in this cause are moot. Appellant has served the term of his confinement; there is no live controversy. All our opinions are advisory in nature, and this one is pursued solely because the plurality insists on addressing the ground for review.

1. The majority, at *131*, after acknowledging that appellant was treated the same as any other

person convicted of DWI who could not speak English, suggests that denial of probation based upon such language ability is constitutional because the same result would have occurred had he spoken only Vietnamese, Russian, or German. However, it is not the particular language that appellant speaks, in this case Spanish, but the fact that he *does not speak English* that is the basis of his treatment in a manner different from English-speakers.

## I.

## INTRODUCTION

Appellant was charged by information with driving while intoxicated (DWI), alleged to have occurred on or about the 24th day of August 1990. In February of 1991, in a trial by jury in the County Court at Law # 2 of Smith County, appellant was found guilty. Thereafter, the trial court assessed punishment at confinement for one year in the county jail and a fine of $100. The Twelfth Court of Appeals affirmed the conviction. *Flores v. State*, 903 S.W.2d 769 (Tex.App.—Tyler 1993). This Court granted appellant's petition for discretionary review raising a single ground for review claiming error at punishment.

## II.

## SUMMARY OF PERTINENT FACTS

The record reflects that an interpreter was appointed to translate so that appellant could understand everything that was said in English in the courtroom, and to translate appellant's testimony.[2] Following the jury's guilty verdict, the trial court proceeded into the punishment phase. The trial court took judicial notice of appellant's application for probation. Appellant testified that he had previously been convicted of DWI and had successfully completed probation for that offense. The trial court did not grant appellant's request for probation, but rather sentenced him to one year in jail and $100 fine. In assessing punishment, the trial court made the following remarks:

> ... I'm not going to put you on probation. To put someone on probation, I have to feel that they can be rehabilitated, and there are no provisions in this county to help Spanish speaking people who are convicted of alcohol offenses.

> If I were to put you on probation, you would have to take the State's alcohol edu-

cation program, which does have a Spanish class but is worthless.

> The alcohol treatment programs are simply not available in Spanish. I've been trying ever since I've been here to try to get this county to admit what century we're in, but it has not happened.

> If I put you on probation, that's absolutely meaningless. This Court hereby assesses your punishment at a one hundred dollar fine and one year in the county jail plus court cost.

## III.

## COURT OF APPEALS' DECISION

The court of appeals rejected appellant's claim that his conviction should be reversed because he was denied due process of law, equal protection of law, and due course of law under the Texas and United States Constitutions in the trial court taking his race and/or ethnic background into consideration when determining whether or not to grant probation. After noting that "[t]he trial [court] admittedly took [appellant]'s linguistic difficulties into account in sentencing, and treated him differently as a result" thereof, the court of appeals concluded that distinctions made with respect to linguistic ability do not warrant a heightened form of due process and equal protection review. *Flores v. State*, 903 S.W.2d at 771–772. It specifically stated, "The requirement that [appellant] be able to understand, participate in, and profit from the only available and effective program was rational and not evidence of any animosity towards [appellant's] racial or ethnic group." *Id.* 903 S.W.2d at 772.

## IV.

## APPELLANT'S CLAIM

Appellant's sole ground for review asserts that he was denied due process of law, equal protection of law, and due course of law "in that the trial court took [his] race and/or

---

2. Specifically, after the interpreter was sworn, the trial court said, among other things, that it wanted the interpreter to:
   explain to the Defendant that your job is to translate so he can understand everything that

is said in English in this courtroom by anybody, and that if he testifies, you are to translate whatever he may testify to the Court.

ethnic background into consideration when determining whether or not to grant probation to [him]." He cites the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 3a and 19 of the Texas Constitution. His sole ground specifically states:

> The court of appeals erred in finding that appellant was not denied due process of law, equal protection of law and due course of law as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 3[a] and 19, of the Texas Constitution in that the trial court took appellant's race and/or ethnic background into consideration when determining whether or not to grant probation to appellant.

Appellant notes that the Fifth Amendment provides that no person shall be deprived of life, liberty or property without due process of law; while the Fourteenth Amendment likewise provides that no state shall deprive any person of such without due process of law, and additionally that no state shall deny any person within its jurisdiction the equal protection of the laws. He also notes that Section 3a of Article I provides that equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. Finally, he notes that Article I, Section 19 provides that no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised except by due course of the law of the land. Appellant insists that the trial court's statements at punishment, indicating refusal to place him on probation merely because of a lack of services for someone of his ethnic background and inability to speak English, indicate that he was denied due process and equal protection.

Appellant's brief primarily focuses upon language-based discrimination being a denial of equal protection and equal rights. He insists that "Spanish language discrimination is often used as a vehicle for singling out individuals, and the Hispanic community as a whole, for adverse treatment[,]" and that "[his] linguistic ability must be treated as a surrogate for race and/or ethnic origin under an equal rights analysis." He asserts that "[w]hen distinctions based on language are made for persons of a recognized minority group in Texas who speak that language, there is evidence, if not a presumption, of unconstitutional discrimination based on national origin and/or race."

Appellant also argues that due course of law, as provided by Article I, Section 19 of the Texas Constitution prohibits language based discrimination. He points out that its protections at a minimum encompass Fourteenth Amendment protections. He also suggests that Section 19 is not limited to restricting government activity and expands due course of law protections to include a prohibition against disenfranchising a citizen, which includes deprivation of citizens' rights, privileges and immunities, and thus affords greater protection than does the Fourteenth Amendment.

Appellant also asserts that Section 19 provides broader due course of law protections for substantive rights. He insists that the denial of probation to him merely because he does not speak English was unreasonable, arbitrary, and unconstitutional.

Appellant ultimately claims that in this case language is inextricably linked to his national origin, and that denial of probation cannot in any conceivable way be considered to be rationally related to any proper state goal. He insists that the act of the trial court in denying probation was improper and a denial of his right to due process and equal protection.

## V.

### STATE'S RESPONSE

The State suggests that "[u]ndoubtedly, the trial court was influenced by the fact that [appellant] had been once before placed on probation for the same offense, and apparently did not learn anything from his classes." It notes that "the trial court's painstakingly obvious ruling explains that [it] would not grant probation because of [appellant's] language ability." (State's brief, p. 2.) The State also agrees that "[t]he trial court classified [appellant] on the basis of his language ability." (State's brief, p. 6.)

While the State agrees "that discrimination based on national origin is prohibited by the due process and equal protection clauses of the U.S. and Texas Constitutions[,]" and acknowledges that "[n]ational origin is a classification or a 'suspect' class whose recognition warrants some heightened form of review[,]" it insists that language ability should not be equated with national origin. It points out that there are differences between language ability and national origin, in particular that language ability is mutable while national origin is not. It insists that "[n]ational origin must not be confused with ethnic or sociocultural traits or an unrelated status."

The State further suggests that "[b]ilingualism is hardly a rarity in today's multicultural world; thus, language ability is not tantamount to national origin." It also points out that no one can change his place of birth or place of his forebears, i.e. national origin or race, or fundamental sexual characteristics. It adds that language, unlike race, place of birth, or sex, is not one of the immutable characteristics determined solely by the accident of birth that are typically the basis for finding a suspect class.

The State also avers that the trial court's action did not burden a fundamental right, particularly since there is no right to receive probation. It insists that the trial court had a legitimate state interest in sentencing a person convicted of his second drunk driving offense to the most appropriate punishment, and that "[p]robation was not a viable option, because [appellant] could not benefit from the various programs, taught in English, offered as a part of probation." It maintains that "[t]he trial court classified [appellant] on the basis of his language ability[,]" and that such "classification rationally furthered the legitimate state interest in punishing a drunk driver, and as such was permissible."

The State asserts that, "[i]n its discretion, the trial court meeted [sic] out the most suitable sentence for both [appellant] and society." While that certainly may be true, i.e. it may have been "the most suitable sentence[,]" the issue is not the suitability of the sentence, but rather the propriety of the trial court excluding appellant from consider-ation for probation because of his language, i.e. Spanish rather than English. As the State acknowledges, "the trial court's painstakingly obvious ruling explains that [it] would not grant probation because of [appellant's] language ability." (State's brief, p. 2.)

## VI.

## ANALYSIS OF DUE PROCESS CLAIM

As noted above, the trial court commented upon appellant's request for probation. This Court has held, "A court's arbitrary refusal to consider the entire range of punishment would constitute a denial of due process[.]" *McClenan v. State,* 661 S.W.2d 108, 110 (Tex. Cr.App.1983). It is undisputed that appellant was eligible for probation, thus probation was within the "entire range of punishment[.]"

Qualified jurors must consider probation when such is a phase of the law upon which the defense is entitled to rely. *See, e.g., Williams v. State,* 773 S.W.2d 525, 536 (Tex. Cr.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989); *Pierce v. State,* 696 S.W.2d 899 (Tex.Cr.App.1985). When the trial court is the sentencer, it must likewise consider the applicable law. As noted above, it is undisputed that appellant was eligible for probation.

The trial court's above-quoted statements about not putting appellant on probation indicate that it did not consider probation for appellant simply because his language was Spanish rather than English. In other words, because of that linguistic characteristic, the trial court was not considering probation to be within the range of punishment for appellant. Pursuant to *McClenan, supra,* I conclude that in the instant cause, the trial court's "arbitrary refusal to consider the entire range of punishment[,]" i.e. including probation, did indeed constitute a denial of due process to appellant.

## VII.

## ANALYSIS OF EQUAL PROTECTION CLAIM

Section One of the Fourteenth Amendment to the United States Constitution provides

that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This Court has recently noted that the underlying tenant of the Equal Protection Clause is that the government must treat citizens as individuals, not simply as components of a racial, religious, sexual, or national class. *Casarez v. State*, —— S.W.2d ——, —— [1994 WL 695868] (Tex.Cr.App. No. 1114-93, delivered December 14, 1994, slip op. at 6, rehearing granted March 1, 1995). We also noted that a violation of the Equal Protection Clause may occur when the government discriminates against the members of a class of individuals who have historically suffered discrimination, i.e. a suspect class, or when the government impairs the members of a class from exercising a fundamental right. *Id.* at ——, slip op. at 7.

The United States Supreme Court has developed various standards by which to review actions alleged to be in violation of the Equal Protection Clause. Whether review is via a strict scrutiny, a rational basis review, or a level of intermediate scrutiny depends upon whether the actions affect a particular class of person or the right affected is fundamental. *Id.* at —— – ——, slip op. at 6–8; *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465, 471 (1988).

Hispanics as an ethnic group constitute an identifiable class for purposes of equal protection analysis. *See, e.g., Keyes v. School District No. 1, Denver, Colorado*, 413 U.S. 189, 196–98, 93 S.Ct. 2686, 2691–92, 37 L.Ed.2d 548, 556–58 (1973); *Hernandez v. Texas*, 347 U.S. 475, 477–80, 74 S.Ct. 667, 670–71, 98 L.Ed. 866, 869–71 (1954). It is undisputed that appellant is hispanic; thus he is a member of such an identifiable class.

Language is but one characteristic that may distinguish a person as a member of a suspect class warranting a strict scrutiny equal protection review. To a person who speaks only one tongue, or to a person who has difficulty using another language other than the one spoken in his home, language might well be an immutable characteristic like skin color, gender, or place of birth.

The U.S. Supreme Court recognized the close nexus between language-speaking ability and ethnicity in *Hernandez v. New York*,

500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), a case involving an equal protection challenge to a prosecutor's use of peremptory strikes to exclude bilingual Latino potential jurors. The Court held that the prosecutor had not violated the Equal Protection Clause because the prosecutor did not rely solely on language ability. *Id.*, 500 U.S. at 360–61, 111 S.Ct. at 1867, 114 L.Ed.2d at 406–07. Nevertheless, the Court did note that "[l]anguage permits an individual to express both a personal identity and membership in a community[.]" *Id.*, 500 U.S. at 370, 111 S.Ct. at 1872, 114 L.Ed.2d at 413. The Court also pointed out that:

> [i]t may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis.

*Id.*, 500 U.S. at 371, 111 S.Ct. at 1872, 114 L.Ed.2d at 413. Appellant suggests that the instant cause is just such a case for treating language proficiency as a surrogate for race. As discussed above, the trial court did indeed refuse to grant probation because of appellant's language ability.

It has also been observed that the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of origin is not a bright one. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582, 592 (1987) (Brennan, J., concurring). It was also pointed out that while one's ancestry, i.e. the ethnic group from which an individual or his ancestors are descended, is not necessarily the same as one's national origin, i.e. the country where an individual was born or the country from which his ancestors came, often the two are identical as a factual matter, and that the terms overlap as a legal matter in some discrimination contexts. *Id.*

Of course, "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Kiyoshi Hirabayashi v. United States*, 320 U.S. 81, 100, 63 S.Ct. 1375, 1385, 87 L.Ed. 1774, 1786. "The protection of the

[U.S.] Constitution extends to all, to those who speak other languages as well as to those born with English on the tongue." *Meyer v. Nebraska,* 262 U.S. 390, 401, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1046 (1923).

A racial classification is presumptively invalid and can be upheld only upon an extraordinary justification, and the rule applies as well to a classification that is ostensibly neutral but is an obvious pretext for racial discrimination. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870, 883 (1979). The U.S. Supreme Court has indicated that the traditional indicia of a suspect classification are that the class is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40 (1973). It has been said that "an individual's primary language skill generally flows from his or her national origin." *Olagues v. Russoniello,* 797 F.2d 1511, 1520 (9th Cir.1986), *vacated on grounds of mootness,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987). It has also been said that "language is an important aspect of national origin" and that "[t]he primary language not only conveys certain concepts, but is itself an affirmation of that culture." *Gutierrez v. Municipal Court of the Southeast Judicial District,* 838 F.2d 1031, 1039 (9th Cir.1988), *vacated on grounds of mootness,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989).

As noted above, it is undisputed that appellant is hispanic. As discussed above, the trial court mentioned "Spanish speaking people who are convicted of alcohol offenses" and clearly indicated that it refused to grant probation simply because of appellant's language ability, which is indisputably a significant part of his hispanic cultural heritage. I conclude that the trial court, in denying probation because of appellant's language ability, was making such decision based upon a significant part of appellant's hispanic ra-

cial/cultural heritage. I reiterate what the U.S. Supreme Court has noted, i.e. that:

> [i]t may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis.

*Hernandez v. New York, supra* at 354, 111 S.Ct. at 1863. I conclude that in the instant cause, appellant's Spanish language is properly treated as a surrogate for race under an equal protection analysis. Therefore making the sentencing decision based upon such language ability does warrant the strict scrutiny equal protection analysis as is done when classifications are made via race.

Classifying people according to race is more likely to reflect racial prejudice than legitimate public concerns, and such classifications are subject to the most exacting scrutiny—to pass constitutional muster, they must be justified by a compelling governmental interest and must be necessary to the accomplishment of their legitimate purpose. *Palmore v. Sidoti,* 466 U.S. 429, 432, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421, 425 (1984). Classifications based on race, alienage, or national origin are so seldom relevant to the achievement of any legitimate state interest; thus laws grounded in such considerations are deemed to reflect prejudice and antipathy and are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985). The Equal Protection Clause demands that racial classifications be subjected to the most rigid scrutiny, and if they are to be upheld, they must be shown to be necessary to the accomplishment of some permissible state objective, independent of the racial discrimination which it was the object of the Fourteenth Amendment to eliminate. *Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010, 1017 (1967).

The State, while arguing that the instant cause should not be viewed with such heightened scrutiny, also avers that the trial court had a legitimate state interest in sentencing a person convicted of his second DWI offense

to the most appropriate punishment, and that probation was not a viable option because appellant could not benefit from the various programs taught in English which were offered as a part of probation. It insists that classifying appellant on the basis of his language ability rationally furthered the legitimate state interest in punishing a drunk driver.

The trial court did mention that there was "the State's alcohol education program, which does have a Spanish class[,]" but expressed the view that such was "worthless." However, the trial court's statement does indicate that such a Spanish language program existed and was available to appellant. Also, the trial court expressed concerns about trying "to get this county to admit what century we're in," apparently as to getting a county sponsored alcohol program in Spanish. Such a measure would obviously meet the trial court's concerns about the availability of an effective program being conducted in Spanish. I also observe that the trial court did appoint an interpreter to translate so that appellant could understand everything that was said in English in the courtroom, and to translate appellant's testimony. As such was done for the trial, such could also have been done for the county sponsored alcohol program.

The availability of the State's alcohol education program, which does have a Spanish class, and of the interpreter to translate for the county program indicates that there were alternatives to excluding appellant from probation simply because of his Spanish language. As the State acknowledges, "the trial court's painstakingly obvious ruling explains that [it] would not grant probation because of [appellant's] language ability." (State's brief, p. 2.) Such a reason is not suitably tailored to serve the State's compelling interest in sentencing appellant.

Taking the trial court's statements and rationale at face value, it is clear that an identically situated defendant who spoke English would have been granted probation, while appellant, who spoke Spanish, was not. Thus, in Smith County, at least in the instant trial court, no one who does not speak English would be able to be granted probation for DWI. The law does not make such a restriction. Such a restriction violates the Fourteenth Amendment's Equal Protection Clause.

## VIII.

### CONCLUSION

I reiterate that the issue is not appellant's suitability or unsuitability for probation, or even the wisdom of granting or not granting probation. The simple issue is whether the trial court could legally refuse to grant probation simply because the defendant does not speak English; i.e. is it constitutionally permissible for a trial judge to indicate that he would otherwise grant probation, except for the fact of the defendant's non-English language? In other words, may probation be legally denied simply because of the defendant's language ability? This is not about creating any new "entitlement" to probation or interpreters, but rather the only "entitlement" is that created by the Constitution of the United States—the "entitlement" to due process and equal protection of the laws; i.e. fair treatment and equal justice. Unfortunately, the majority of this Court obviously does not believe that such fundamental fairness or equal justice is required by our laws, and even suggests that such "could lead to many unfortunate results." Op. at 131. In my view, abiding by the U.S. Constitution's requirements of due process and equal protection is certainly not an "unfortunate result."[3]

Based upon the above discussions, I conclude that the trial court's action in "not

---

**3.** The purported "parade of *horribles*" which the majority prophecizes about would certainly not result from this Court acknowledging that the U.S. Constitution's due process and equal protection provisions apply to appellant in the instant case. Acknowledging such would simply preclude trial courts from denying probation because of language ability; it would not prevent denial or granting upon other bases, but would simply take language out of the field of consideration for probation eligibility. No one, because of their language ability, has any "entitlement" to probation; but likewise no one can be precluded from consideration for probation because of their language ability.

grant[ing] probation because of [appellant's] language ability" was a violation of appellant's rights to due process and equal protection.[4] This Court should therefore reverse the judgment of the court of appeals and remand the cause to the trial court for resentencing in accordance with the principles enunciated in this dissenting opinion.[5] Because the majority does not, I dissent *with principle*—something that the majority seems to be lacking with respect to non-English speakers.

BAIRD, J., joins.

MALONEY, J., joins with note: Where the harsher punishment of incarceration as opposed to the less harsh punishment of probation was meted out solely and only because the defendant did not speak English, on the facts of this case, language is a surrogate for race.

4. Because of my conclusions under appellant's U.S. constitutional claims, it is unnecessary to address his arguments via the Texas Constitution since it certainly does not, and can not, provide less protection for the citizens of Texas than does the U.S. Constitution.

5. I point out that since the basis for not granting probation, i.e. appellant's language ability, was improper, it would appear that unless some other factor has arisen since the time of sentencing, some sort of probated sentence may be the only appropriate sentence. Since appellant's language was the basis for not granting probation, and such was an improper basis, a probated sentence may be the only appropriate sentence unless the trial court articulates another rationale which has since arisen.