COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-258-CR
  
  
JULIO 
ALFONSO ACOSTA                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        Appellant 
was indicted for possession of a controlled substance, cocaine, of more than 400 
grams with intent to deliver.  On January 9, 2003, the State proceeded on 
the lesser offense of possession of a controlled substance, cocaine, of 200 
grams or more, but less than 400 grams, with intent to deliver and Appellant 
entered an open plea of guilty to the trial court.  On May 28, 2003, the 
trial court conducted a sentencing hearing and sentenced Appellant to 
twenty-five years’ confinement.  Appellant filed a motion for new trial 
arguing his plea was involuntary due to ineffective assistance of counsel and 
violation of his Eighth Amendment rights.  The trial court conducted a 
hearing and denied Appellant’s motion for new trial.  In three issues, 
Appellant argues that: (1) the trial court erred in denying his motion for new 
trial on the basis that his guilty plea was involuntary due to ineffective 
assistance of counsel; (2) his sentence violates his Eighth Amendment rights 
under the United States Constitution because his sentence is grossly 
disproportionate to the crime and inappropriate towards him; and (3) his 
sentence violates his Article I, Section 13 rights under the Texas Constitution 
because the sentence is grossly disproportionate to the crime and inappropriate 
towards him.  We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
        Appellant 
was arrested for attempting to sell a “kilo” of cocaine.[1]  
Testimony showed that Appellant’s brother-in-law introduced him to a man named 
Joe, whom Appellant was told was looking for a drug supplier.  Testimony 
further showed that Appellant obtained the “kilo” of cocaine from a man he 
knew only as Pekachu.  Appellant testified that Pekachu gave him the 
cocaine and Appellant was supposed to meet him later at a predetermined location 
to deliver his money.  However, Appellant stated that he did not know 
anything about Pekachu, other than his phone number.  Appellant further 
testified that he went to Joe’s apartment after receiving the cocaine from 
Pekachu, Joe got into his car, exited, and Appellant was blocked in by Hurst 
police officers and arrested.  It was later learned that Joe was a 
confidential informant.  Appellant stated that once in custody he gave a 
written statement and signed a consent to search his home, where police 
recovered a stolen gun.
        Appellant 
entered an open plea of guilty to the trial court and was fully admonished 
orally and in writing. Appellant answered affirmatively that he had an 
opportunity to discuss his case with his attorney, and he understood the range 
of punishment, the significance of his judicial confession, and that he was 
pleading guilty without a plea-bargain agreement.  After receiving a 
presentence investigation report, the trial court proceeded to sentencing on May 
28, 2003.  At the sentencing hearing, the trial court reminded Appellant of 
the charge against him and his plea of guilty on January 9, 2003.  At the 
sentencing hearing, Appellant testified that he rejected two plea-bargain 
agreements of fifteen and eight years because he was hoping the court would give 
him another chance to be with his family.  Appellant’s trial counsel 
asked the trial judge to consider placing Appellant on deferred adjudication or 
community supervision.  The trial court rejected Appellant’s request and 
sentenced him to twenty-five years’ confinement.
        Appellant 
filed motions for a new trial on July 2 and July 7, 2003.  In his motions, 
Appellant argued that he received ineffective assistance of counsel, which 
resulted in an involuntary plea of guilty, and that his sentence violated the 
Eighth Amendment as cruel and unusual punishment.  The trial court 
conducted a hearing on the motions for new trial on August 1 and August 8, 2003.
HEARING ON MOTION FOR NEW TRIAL
         Appellant’s 
trial counsel was the first to testify at the hearing on the motion for new 
trial.  Appellant’s trial counsel stated he was retained the day after 
Appellant’s arrest and began meeting with Appellant and soon learned the 
details of Appellant’s arrest and the involvement of the confidential 
informant.  Appellant’s trial counsel stated he first considered trying 
to federalize Appellant’s case because Appellant would face a lesser sentence, 
but that this would be contingent on Appellant being able to provide 
“substantial assistance” to the government.  According to Appellant’s 
trial counsel, Appellant told him not to talk to the federal prosecutor, stating 
“[t]his case is going to go away.”  Appellant’s trial counsel stated 
Appellant “refused” to provide additional information and he thought 
Appellant “was not telling me the whole picture.”  Appellant’s trial 
counsel also testified that he wanted to investigate Appellant’s 
brother-in-law to determine his connection with Appellant’s arrest, but 
Appellant refused. Appellant’s trial counsel recommended that they file a 
motion for an examining trial, but again Appellant refused.  Appellant’s 
trial counsel stated he believed Appellant refused the examining trial because 
he feared that his bond might have been set higher.  Appellant’s trial 
counsel stated that he also inquired into the details surrounding Appellant’s 
written statement and the consent to search, and although Appellant stated he 
was scared, he never disclosed that he was lied to or threatened by police.
        Appellant’s 
trial counsel stated that while representing Appellant, the State offered a plea 
bargain of fifteen years, but Appellant rejected the offer.  Appellant’s 
trial counsel testified that he spoke again with the prosecutor and was able to 
get the State to reoffer a plea of fifteen years, however Appellant again 
rejected the offer.
        Appellant’s 
trial counsel testified that he filed a motion to suppress and a hearing was set 
for January 9, 2003.  Appellant’s trial counsel testified that the State 
did not provide him with the full name of the informant until he arrived for the 
hearing on the motion to suppress and he was unsure whether the prosecutor 
informed him that they did not know his whereabouts, but he speculated with 
Appellant that the State might not be able to locate the informant.  
Appellant’s trial counsel said he recommended that they seek a continuance so 
he could fully investigate the informant before proceeding on the motion to 
suppress.  Appellant’s trial counsel testified he did not feel that he 
would be acting in his client’s best interests if he proceeded on the motion 
to suppress without first investigating the informant.  However, 
Appellant’s trial counsel stated he never told Appellant not to pursue the 
motion to suppress; rather Appellant’s trial counsel stated Appellant told him 
he did not want to pursue a continuance, but instead wanted to enter an open 
plea.  Appellant’s trial counsel stated he explained the dangers of 
entering an open plea of guilty and further explained that he believed Appellant 
would be facing a sentence between twenty-five and thirty-five years if he 
entered an open plea, especially since he learned that the trial judge tended to 
render harsh sentences.
        Additionally, 
Appellant’s trial counsel testified he negotiated with the prosecutor and was 
able to obtain a plea offer of eight years if Appellant accepted that day.  
Appellant’s trial counsel testified that he believed this was a good offer and 
he encouraged Appellant to take it.  Appellant’s trial counsel testified 
that Appellant refused and Appellant told him “I don’t want to do a day in 
jail.”  Appellant’s trial counsel testified that ultimately Appellant 
went against his advice and entered an open plea of guilty.
        Appellant’s 
trial counsel stated that he believed that throughout his representation 
Appellant was relying on the “spiritual advice” of his godfather in making 
all of his decisions.  Appellant’s trial counsel stated that Appellant 
seemed to believe that the charges were just going to go away.  
Appellant’s trial counsel also related the events of an encounter he had with 
Appellant and his godfather.  He stated that at one of the proceedings, 
Appellant and his godfather asked him if he thought the judge took his gavel 
with him at the end of the day.  Appellant’s trial counsel testified that 
he thought that Appellant’s godfather was going to take the gavel and use it 
in some sort of black magic ritual.  Appellant’s trial counsel stated he 
told both Appellant and his godfather not to do anything illegal and further 
told Appellant to keep his godfather away from him.
        Appellant’s 
trial counsel testified that he discussed every available option with Appellant 
regarding his case, including trying the case before the judge or a jury, 
pleading guilty to a jury and having the jury assess punishment, and entering an 
open plea.  Appellant’s trial counsel stated that Appellant told him he 
did not want to go before a jury at any point.  Additionally, Appellant’s 
trial counsel testified that the State was only willing to reduce the offense if 
Appellant entered a plea.  Appellant’s trial counsel stated that if 
Appellant entered an open plea to the lesser offense, the trial judge could 
consider community supervision or deferred adjudication, but he did tell 
Appellant that he wasn’t necessarily going to get either.
        Appellant’s 
trial counsel testified that he explained the plea papers to Appellant and 
Appellant indicated that he understood the paperwork.  Furthermore, 
Appellant’s trial counsel “absolutely” believed Appellant made his own 
decision freely and voluntarily to enter an open plea of guilty.
        The 
prosecutor assigned to the case was also called as a witness at the hearing on 
the motion for new trial.  She testified she thought she had informed 
Appellant’s trial counsel of the full name of the confidential informant about 
a week before the suppression hearing was set, but she could not specifically 
recall.  The prosecutor also testified that, although she learned the 
informant had moved and she had not attempted to locate him, she believed she 
could prove the State’s case without the informant based on the testimony of 
the police officers.
        The 
prosecutor further testified that on the day the suppression hearing was 
scheduled, Appellant’s trial counsel talked her into offering eight 
years.  She expressed that she made the offer to get rid of the case 
because she stated that Appellant’s trial counsel had repeatedly called her 
and she was tired of dealing with him.  Additionally, the prosecutor stated 
that she believed Appellant’s trial counsel had provided Appellant with good 
representation.
        Finally, 
Appellant was called to testify at the hearing on the motion for new 
trial.  Regarding the signing of his statement and the consent to search, 
Appellant testified that the officers told him to think how his family would 
suffer if he were to go to prison.  Appellant stated this made him think 
about his family and made him decide to provide his statement.  He also 
testified that he was told that officers were at his house and if he didn’t 
sign the consent to search “they were going to go anyway and pull down the 
door.”  Appellant stated his wife was pregnant at the time and he said 
the officers told him “she might lose the baby” and this was the reason he 
signed the consent to search.  Appellant testified that he told his trial 
counsel that the officers had lied to him in order to obtain the statement and 
the consent to search and he stated that his trial counsel replied, 
“[T]hat’s their job, that’s what they’re supposed to do.”  He 
testified that his trial counsel did not ask him how they lied to him; however, 
Appellant stated he did not tell his trial counsel what the officers had 
supposedly said to him.
        Appellant 
testified that his trial counsel never told him he had learned the full name of 
the informant, nor did he tell him he wanted to seek a continuance in order to 
investigate the informant.  Appellant stated that he would have agreed to a 
continuance if he had been told.  Furthermore, Appellant testified that he 
was interested in pursuing the motion to suppress and he did not know why a 
hearing had not been held, but he stated he assumed it was because the informant 
could not be located.  Appellant also testified that his trial counsel 
never told him the consequences to the State’s case if the informant could not 
be located.  Appellant stated that his trial counsel told him his only 
option was to accept the offer from the prosecutor and did not discuss any other 
options with him.  However, Appellant did testify that his trial counsel 
did advise him not to enter an open plea to the judge and Appellant further 
stated that it was his decision to enter an open plea.
        In 
addition, Appellant denied telling his trial counsel that the case was going to 
go away, but he stated that his trial counsel told him that he and his 
investigator were working to make the case go away.  Further, Appellant 
stated he was not relying on the advice of his godfather, but rather his 
godfather was merely providing moral support.  Appellant did not know where 
his trial counsel came to the idea that his godfather was going to perform black 
magic on the judge’s gavel.  Appellant denied telling his trial counsel 
to stay away from his brother-in-law and testified that although he told his 
trial counsel that he did not believe his brother-in-law had anything to do with 
his arrest or being set up by the informant, had his trial counsel given him a 
good reason to investigate his brother-in-law, he “most likely would’ve said 
yes.”
        Appellant 
testified that when he entered his plea, he signed two documents, only one of 
which he said he read.  He stated that he didn’t get to read the other 
one and his trial counsel did not read either document to him.  Appellant 
stated that he was told by his trial counsel to answer “yes” to the 
judge’s questions; however, Appellant didn’t testify he did not understand 
what was occurring and, to the contrary did state he understood that he was 
pleading guilty.  Appellant stated that he would not have entered an open 
plea of guilty that day if he had realized that they could have proceeded on the 
motion to suppress.
        At 
the conclusion of the hearing, the trial judge overruled Appellant’s motion 
for new trial, stating “we’ve got a swearing match between the attorney and 
your client.”
INEFFECTIVE ASSISTANCE OF COUNSEL
        In 
his first issue, Appellant argues that the trial court erred in overruling his 
motion for new trial because the record shows that he entered his guilty plea 
involuntarily due to ineffective assistance of counsel.
        A 
trial court's ruling denying a defendant's motion for new trial is reviewed 
under an abuse of discretion standard.  Charles v. State, 146 S.W.3d 
204, 208 (Tex. Crim. App. 2004).  We do not substitute our judgment for 
that of the trial court, but rather we decide whether the trial court’s 
decision was arbitrary or unreasonable.  Id.  We must view the 
evidence in the light most favorable to the trial court’s ruling and presume 
that all reasonable factual findings that could have been made against the 
losing party were made against that losing party.  Id.  Thus, a 
trial court abuses its discretion in denying a motion for new trial only when no 
reasonable view of the record could support the trial court’s ruling.  Id. 
At a hearing on a motion for new trial, the trial judge is the trier of fact and 
the sole judge of the credibility of the witnesses.  Woodall v. State, 
77 S.W.3d 388, 393 (Tex. App.—Fort Worth 2002, pet. ref’d).
        When 
a defendant challenges the voluntariness of a plea entered upon the advice of 
counsel, contending that his counsel was ineffective, the voluntariness of the 
plea depends on (1) whether counsel's advice was within the range of competence 
demanded of attorneys in criminal cases and if not, (2) whether there is a 
reasonable probability that, but for counsel's errors, he would not have pleaded 
guilty and would have insisted on going to trial.  Ex parte Moody, 
991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).  In evaluating the 
effectiveness of counsel under the first prong, we look to the totality of the 
representation and the particular circumstances of each case.  Thompson 
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Any allegation of 
ineffectiveness must be firmly founded in the record, and the record must 
affirmatively demonstrate the alleged ineffectiveness.  Id.  
There is a strong presumption that counsel's conduct fell within the wide range 
of reasonable professional assistance.  Id.  Appellant bears 
the burden of proving by a preponderance of the evidence that counsel was 
ineffective.  Id.
        As 
detailed above, the testimony of Appellant and his trial counsel at the hearing 
on the motion for new trial was in sharp conflict.  In overruling the 
motion for new trial, the trial judge made it clear on the record that 
“we’ve got a swearing match between the attorney and your client.”  
Thus, the trial judge, as the sole judge of the credibility of the witnesses, 
was free to disbelieve the assertions made by Appellant that formed the basis of 
his claim of ineffective assistance of counsel.  Additionally, the record 
confirms that Appellant was fully admonished orally and in writing when he 
entered his guilty plea, and he indicated that he understood the nature of the 
charges, the range of punishment, and that there was no plea-bargain 
agreement.  Moreover, Appellant acknowledged that he decided to enter an 
open plea of guilty against the advice of his trial counsel and he understood 
that he was pleading guilty to the charges against him.  A finding that a 
defendant was duly admonished creates a prima facie showing that a guilty plea 
was entered knowingly and voluntarily.  Martinez v. State, 981 
S.W.2d 195, 197 (Tex. Crim. App. 1998).  Once an accused attests that he 
understands the nature of his plea and that it was voluntary, he has a heavy 
burden to prove on appeal that his plea was involuntary.  McNeill v. 
State, 991 S.W.2d 300, 302 (Tex. App.—Houston [1st Dist.] 1999, pet. 
ref’d, untimely filed).
        Based 
on our review of the record, we conclude that Appellant has failed to overcome 
the strong presumption that his trial counsel provided adequate assistance and 
that his plea was voluntarily entered.  Thus, we hold that the trial court 
did not abuse its discretion in overruling Appellant’s motion for new trial on 
Appellant’s ineffective assistance of counsel claim.  We overrule 
Appellant’s first issue.
PROPORTIONALITY OF SENTENCE
        In 
his second and third issues, Appellant argues that his sentence violates both 
his Eighth Amendment rights under the United States Constitution and his Article 
I, Section 13 rights under the Texas Constitution because the sentence is 
grossly disproportionate to the crime and inappropriate to him.
        We 
first note that Appellant did not argue in his motion for new trial to the trial 
court that his rights under the Texas Constitution were violated.  
Therefore, Appellant’s claim under the Texas Constitution has not been 
preserved for appeal. Tex. R. App. P. 33.1(a); see Rhoades 
v. State, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that defendant 
waived any claim that his Article I, Section 13 rights under Texas Constitution 
were violated when no objection was lodged in trial court); Buster v. State, 
144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.) (holding that because the 
accused made no objections to the trial court regarding the issue of cruel and 
unusual punishment, he waived that issue with respect to any alleged violation 
of his rights under the Texas Constitution).  Therefore, we will turn our 
attention to Appellant’s Eighth Amendment claim.
        In 
addressing his Eighth Amendment claim, Appellant admits that there is confusion 
in the law regarding whether the Eighth Amendment contains a proportionality 
guarantee after the United States Supreme Court decision in Harmelin v. 
Michigan, 501 U.S. 957, 111 S. Ct. 2680 (1991).[2]  
However, we have previously chosen to follow the United States Court of Appeals 
for the Fifth Circuit in applying a proportionality analysis in addressing 
Eighth Amendment proportionality complaints.[3]  Moore 
v. State, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref’d).  
In conducting a proportionality analysis, we must first make a threshold 
comparison of the gravity of the offense against the severity of the 
sentence.  Id.  We are to judge the gravity of the offense in 
light of the harm caused or threatened to the victim or society, and the 
culpability of the offender.  Id.
        In 
this case, Appellant was originally indicted for possession, with intent to 
deliver, of more than 400 grams of cocaine, but was ultimately allowed by the 
State to plead guilty to the lesser offense of possession, with intent to 
deliver, of 200 grams or more but less than 400 grams of cocaine.  The 
record reveals that the cocaine found in the possession of Appellant had a total 
weight of 976.74 grams.  The lesser offense to which Appellant pleaded 
guilty carried a punishment of imprisonment “for life or for a term of not 
more than 99 years or less than 10 years, and a fine not to exceed $100,000.” Tex. Health & Safety Code Ann. § 
481.112(e) (Vernon 2003).  The trial court sentenced Appellant to 
twenty-five years’ confinement and no fine. In sentencing Appellant, the trial 
judge remarked that “this offense is one that greatly disturbs the court” 
and “I’m alarmed because of the amount of substance involved.”
        Appellant 
argues that based on the record “[t]he trial court should have provided 
Appellant the opportunity for probation.”  He points to the fact that he 
has no prior felony convictions, he previously successfully completed probations 
for the misdemeanor offenses of terroristic threat and driving while license 
suspended, he accepted responsibility for his actions, and there was no evidence 
that he was a known drug dealer.
        We 
first note that there is no fundamental right to receive probation; it is within 
the discretion of the trial court to determine whether an individual defendant 
is entitled to probation.  Speth v. State, 6 S.W.3d 530, 533 (Tex. 
Crim. App. 1999), cert. denied, 529 U.S. 1088 (2000); Flores v. State, 
904 S.W.2d 129, 130 (Tex. Crim. App. 1995), cert. denied, 516 U.S. 1050 
(1996).  Additionally, possession, with intent to deliver cocaine, 
especially in the amount in the possession of Appellant, is a very grave 
offense.  The greater the amount of illicit drugs possessed, the more 
likely use is widespread and delivery to others is intended, and the greater the 
harm to society.  Smith v. State, 737 S.W.2d 933, 938 (Tex. 
App.—Dallas 1987, pet. ref’d).  And as the San Antonio Court of Appeals 
recognized in Thomas v. State,
  
Delivery of cocaine, a controlled substance, known for its addictive powers, is 
a serious offense.  It is common knowledge that possession, use, and 
distribution of illegal drugs represents one of the greatest problems affecting 
the health and welfare of our population.  Studies clearly demonstrate the 
direct nexus between illegal drugs and crimes of violence.
   
916 
S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.).
        Furthermore, 
the twenty-five year sentence imposed on Appellant was well within, and toward 
the lower end, of the range of punishment set by the legislature.  Notably, 
we are also cognizant that the Supreme Court in Harmelin upheld the 
imposition of a mandatory life sentence, without the possibility of parole, for 
possession of more than 650 grams of cocaine, and without any consideration of 
mitigating factors, such as the fact that the defendant had no prior felony 
convictions.  501 U.S. 957, 994-96, 111 S. Ct. 2680, 2701-02.  
Contrasted to Harmelin, there is the possibility of parole in this 
case.  Therefore, given the gravity of the offense, we hold that 
Appellant’s sentence is not grossly disproportionate in violation of his 
Eighth Amendment rights.  Thus, Appellant’s second issue is overruled.
CONCLUSION
        Having 
overruled Appellant’s first and second issues and concluding that his third 
issue was waived, we affirm the trial court’s judgment.
 
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
 
PANEL 
B:   DAUPHINOT, GARDNER, and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
March 3, 2005


NOTES
1.  
The record contains a lab report showing the total weight of the cocaine was 
976.74 grams.
2.  
In Harmelin, Justice Scalia, joined by Chief Justice Rehnquist, concluded 
that “the Eighth Amendment contains no proportionality guarantee.”  501 
U.S. at 965, 111 S. Ct. at 2686.  Justice Kennedy, joined by Justices 
O’Connor and Souter, concluded that the Eighth Amendment “encompasses a 
narrow proportionality principle.”  Id. at 997, 111 S. Ct. 2702 
(Kennedy, J., joined by O’Connor & Souter, JJ., concurring in part and 
concurring in judgment).  Justice White, joined by Justices Blackmun and 
Stevens, found that the Eighth Amendment does include a “proportionality 
principle.”  Id. at 1012, 111 S. Ct. 2710 (White, J., joined by 
Blackmun and Stevens, JJ., dissenting).
3.  
In McGruder v. Puckett, the Fifth Circuit Court of Appeals concluded that 
“disproportionality survives” based on a “head-count analysis” of the 
decision in Harmelin.  954 F.2d 313, 316 (5th Cir.), cert. denied, 
506 U.S. 849 (1992).